UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COMPASS HOMES, INC.,
    Plaintiff,

v.

HERITAGE CUSTOM HOMES,
et al.,
    Defendants.

Case No. 2:13-cv-779
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Defendants' motion for judgment on the pleadings. Doc. 10. For the reasons that follow, the motion is **GRANTED in part and DENIED in part** in accordance with this Opinion and Order.

### I. BACKGROUND

Compass Homes, Inc. ("Compass") is based in Delaware County, Ohio.[1] Doc. 2 ¶ 2. It "creates architectural designs" and then "constructs and markets houses that embody those architectural designs." *Id.* ¶ 10. Defendants Britt and David Lakin ("the Lakins") reside in Union County, Ohio. *Id.* ¶ 11. According to the complaint, in May of 2011 the Lakins asked Compass to produce architectural designs and drawings for a home they intended to construct. *Id.* Compass attaches these drawings and designs to its complaint as Exhibit A. *See* doc. 2-1 at 1–4. The drawings include the following stamp with a header of "copyright 2011":

> All drawings and written material appearing herein constitute the original and unpublished work of Compass Homes Inc. and/or the same may not be copied[,] used[,] disclosed or consigned to a third party without the express written consent of Compass Homes Inc.[,] which retains the common law copyright to this material.

---

[1] For the purpose of resolving Defendants' motion, all of Compass's "well-pleaded material allegations . . . must be taken as true." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

1

Doc. 2 ¶ 13; *see, e.g.*, doc. 2-1 at 1. Compass avers that it registered the drawings and designs with the United States Copyright office on May 4, 2012. Doc. 2 ¶ 14. For support, it attaches as Exhibit B to its complaint what it contends is a certificate verifying its copyright registration. *See* doc. 2-1 at 5. The purported registration certificate appears in the form of a list of thirteen information fields, with corresponding information filled in—information including a registration number, an application title, the copyright claimant, who authored the application, and the basis of the claim. *See id.* The Exhibit does not come on official paper or contain any information outside that listed in the corresponding fields.

Compass avers that it created the designs and drawings "with the understanding that the Lakins would contract with it for the construction of a home based upon that design." *Id.* ¶ 11. This did not happen. Instead, according to Compass, the Lakins gave the drawings to Heritage Homes, *id.* ¶ 16; *see* doc. 17 at 1 ("Heritage the Green Builders, LLC d/b/a Heritage Homes"), a company also located in Delaware County, Ohio, doc. 2 ¶ 2. Compass avers that Heritage used Compass's original plans to create an additional set of "Infringing Plans," *see* ¶ 22(a) ("unauthorized copies or derivatives of" the copyrighted drawings); and that Heritage used the drawings to construct the Lakins' home in Union County, Ohio, *id.* ¶ 19. Compass attaches the unauthorized derivative drawings and designs as Exhibit C to its complaint. Doc. 2-1 at 6. In addition to making copies of the drawings and using them to construct the Lakins' house, Compass avers that Heritage created "non-pictoral representations" of its designs, which Heritage then used in its advertising and marketing materials. Doc. 2 ¶ 22(b). Compass also avers that several John Does "participated in the preparation of plans for [the Lakins'] home." *Id.* ¶ 16. None of the Defendants obtained Compass's permission to use the drawings to assist in the construction of the Lakins' home. *Id.* ¶ 20. Compass also avers that Defendants undertook

their efforts "with actual knowledge of Compass's copyrights and despite prominent notices and warnings" on the designs and drawings. *Id.* ¶ 22(e).

Compass filed suit in this Court in August of 2013. It brings claims against all Defendants—Heritage, the Lakins, and the John Doe Defendants—for copyright infringement, unjust enrichment, and conversion. It brings an additional count against Heritage for tortious interference with business relationships. Both Heritage and the Lakins answered the complaint in September of 2013, with Heritage amending its answer on September 25, 2013. Heritage and the Lakins then moved for judgment on the pleadings on October 15, 2013.

## II. STANDARD

The Court reviews Rule 12(c) motions—for judgment on the pleadings—in the same manner it would review a motion made under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-CV-0299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying the plausibility standard articulated in *Twombly*).

3

Several considerations inform whether a complaint meets the facial-plausibility standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Further, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not, however, "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Courts must construe the claim at issue in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

## III. DISCUSSION

Defendants first contend that Compass has failed to comply with the Copyright Act, and that this requires dismissal of its copyright claim. They next contend that Compass's copyright claim preempts its state-law claims for unjust enrichment, conversion, and tortious interference. The Court addresses each contention in turn.

### A. Copyright Act

Defendants contend that Compass does not attach a valid certificate of copyright registration to its complaint, which, in their argument, calls for dismissal. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (requiring registration as a precondition to filing a copyright claim). Compass counters that it attaches a valid registration—issued by the United States Copyright Office—as Exhibit B to its complaint, which it received before filing suit. Defendants reply that Compass's attached registration contains no official insignia and appears indicative of an *application* for—rather than a bona fide registration of—a copyright.

4

The Copyright Act requires "preregistration or registration of the copyright claim" before a party can bring a "civil action for infringement of the copyright." 17 U.S.C. § 411(a). "[T]here is a split of authority among federal courts (which the Sixth Circuit has not addressed) as to when 'registration' occurs for purposes of § 411(a)." *Schenck v. Orosz*, No. 3:13-CV-0294, 2013 WL 5963557, at *7 (M.D. Tenn. Nov. 7, 2013). Some courts, including the Fifth, Seventh, and Ninth Circuits, follow an "application approach," meaning "the copyright is 'registered' upon submitting the requisite fee, deposit, and application." *Id.* Others, including the Tenth and Eleventh Circuits, as well a number of district courts in this circuit, follow a "registration approach," meaning "the copyright is 'registered' only when the Copyright Office passes on the material submitted by the applicant." *Id.*; *see Allure Jewelers, Inc. v. Ulu*, No. 1:12CV91, 2012 WL 4322519, at *2 (S.D. Ohio Sept. 20, 2012) ("Several district courts within the Sixth Circuit have construed this registration requirement strictly . . . ."). Although the Sixth Circuit has not weighed in, the Court follows the approach employed by the district courts in this circuit that have faced the issue. The question under that approach is whether the plaintiff actually obtained copyright registration before the suit was filed. *Allure*, 2012 WL 4322519, at *2.

The Court declines to dismiss Compass's claim at this stage based on Defendants' copyright-registration argument. On the face of the pleadings, Compass clearly avers that it obtained registration on May 4, 2012. Doc. 2 ¶ 14. It submits a document attached as Exhibit B demonstrating a copyright registration number and date (in 2012) for a Compass-related architectural work. These both work to establish, for the sake of overcoming Defendants' motion for judgment on the pleadings, a facially plausible claim that Compass obtained copyright registration of the materials in question before it brought suit.

5

Defendants' arguments to the contrary do not change this conclusion. They first counter by urging for a closer examination of Exhibit B. Defendants are correct that the document does not necessarily resemble an official copyright registration document. *See* 17 U.S.C. 410(a) ("When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim *and issue to the applicant a certificate of registration under the seal of the Copyright Office.*" (emphasis added)). Still, the document contains a registration number and date, and indicates actual copyright registration in a Compass-related architectural work. *See id.* ("The certificate shall contain the information given in the application, together with the number and effective date of the registration."). The Court must accept as true the allegations made in the complaint and construe the allegations in Compass's favor. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11–12 (6th Cir. 1987). Given this, and given the early stage of litigation, the Court denies the motion for judgment on the copyright claim without prejudice to Defendants' right to renew the issue at summary judgment.[2]

Defendants' citation to *Elsevier* also does not help their cause. There the Supreme Court held that section 411(a) imposes a nonjurisdictional precondition to filing suit under the Copyright Act. *See* 559 U.S. at 166. To be sure, district courts in this circuit following the *Elsevier* decision have "uniformly concluded that . . . claims premised on unregistered copyrights must be dismissed in light of § 411(a)." *Scheck*, 2013 WL 5963557, at *7. But again, the Court

---

[2] The Court also finds a related counter advanced by Defendants unconvincing. They argue that Compass's pleadings conflict with its purported copyright registration; and that, in turn, the Court should accept the facts as stated in the attached document. *Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002) ("If a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document."). This argument does not directly apply here. Nothing in the attachment contradicts the pleadings, or vice versa. The complaint indicates that Compass obtained copyright registration in 2012, which the attached document appears to verify.

6

has concluded that, for now, based on the pleadings, Compass meets this standard and thus survives Defendants' motion for judgment on the pleadings. For these reasons, Defendants' motion as to Compass's copyright claim is denied.

## B. State-Law Claims

Compass also brings three state-law claims, which Defendants contest on preemption grounds. The Copyright Act generally preempts state-law claims that resemble those brought under federal law, specifically those based on

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished . . . .

17 U.S.C. § 301(a). In practice, determining whether section 301(a) preempts a state-law claim involves a two-step process "highly dependent upon the facts presented and the claims actually pled by the parties." *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 636 (6th Cir. 2001), *abrogated on other grounds by Elsevier*, 559 U.S. 154. In order for preemption to apply under the first step, the work at issue must be "within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). The parties do not contest this point. *See* 17 U.S.C. § 102(a)(8) (noting that "[c]opyright protection subsists" in "architectural works"); *see also Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (explaining that a work satisfies this requirement if it fits "within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection").

The parties instead focus their arguments on the second part of the preemption test—the "equivalency requirement." *Id.* "Courts analyze equivalency by applying a functional test to

7

determine whether the state law right at issue is equivalent to any of the exclusive rights under Section 106 of the Copyright Act." *Id.* at 301 (internal quotation marks omitted); *see* 17 U.S.C. § 301(a). Under this test, "[e]quivalency exists"—and preemption applies—"if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights" granted by the Copyright Act. *Stromback*, 384 F.3d at 301 (quoting *Wrench*, 256 F.3d at 456). By contrast, equivalency does not exist "if an extra element is required instead of or in addition to the acts of reproduction, distribution or display," assuming the "extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* (quoting *Wrench*, 256 F.3d at 456).[3] The Court turns now to apply the functional equivalency test to the state-law claims at hand.

### 1. Unjust Enrichment

Compass's first state-law claim is for unjust enrichment. An unjust enrichment claim under Ohio law has three elements: "(1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860 (6th Cir. 2002). For support, Compass alleges that

---

[3] The First Circuit provides a helpful set of examples to explain when preemption does and does not apply under an equivalency analysis:

> For example, a state claim of tortious interference with contractual relations may require elements of awareness and intentional interference not necessary for proof of copyright infringement. And yet, such an action is equivalent in substance to a copyright infringement claim where the additional elements merely concern the extent to which authors and their licensees can prohibit unauthorized copying by third parties. Similarly, a state law misappropriation claim will not escape preemption under Section 301(a) simply because a plaintiff must prove that copying was not only unauthorized but also commercial[ly] immoral[,] a mere label attached to [the same] odious business conduct. Nonetheless, a trade secrets claim that requires proof of a breach of a duty of confidentiality stands on a different footing. Such claims are not preempted because participation in the breach of a duty of confidentiality—an element that forms no part of a copyright infringement claim—represents unfair competitive conduct qualitatively different from mere unauthorized copying.

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier*, 559 U.S. 154; *see Stromback*, 384 F.3d at 301 (citing *Data Gen.*, 36 F.3d at 1164, for this point).

8

Defendants copied the drawings or produced derivative drawings, which they then used to construct the Lakins' new house. Section 106 of the Copyright Act protects against unlicensed "reproduction, performance, distribution or display" of a copyrighted work. *Wrench*, 256 F.3d at 456; *see also* 17 U.S.C. § 106 (also protecting against the "prepar[ation] of derivative works"). The company thus seeks to vindicate the same rights with both its unjust enrichment and copyright claim. Still, Compass can escape preemption if its claim requires an "extra element" that concerns rights outside the scope of copyright law and does so in a way that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Stromback*, 384 F.3d at 301 (quoting *Wrench*, 256 F.3d at 456). Applied here, Compass does bring one additional allegation: that it created the now copyrighted drawings "with the understanding that the Lakins would contract with it for the construction of a home based upon that design." Doc. 2 ¶ 11. Compass argues that this qualifies as the additional element it needs to save its unjust enrichment claim from preemption.

In *Wrench*, the Sixth Circuit addressed whether a claim similar to the one Compass alleges survives preemption. It held that the key equivalency-test consideration is whether a plaintiff bases its claim on a contract implied in law or one implied in fact. For support, the court explained the two types of contracts: contracts implied in fact "do[] not exist, unless the minds of parties meet, by reason of words or conduct," while contracts implied in law are "constructive, and do[] not require a meeting of minds, [rather are] imposed by fiction of law." *Wrench*, 256 F.3d at 456. "For the purpose of the preemption analysis," the *Wrench* Court explained that "there is a crucial difference between claim based on quasi-contract, *i.e.*, a contract implied in law, and a claim based upon a contract implied in fact":

> In [a contract implied in law], the action depends on nothing more than the unauthorized use of the work. Thus, an action based on a contract implied in

9

> law requires no extra element in addition to an act of reproduction, performance, distribution or display, whereas an action based on a contract implied in fact requires the extra element of a promise to pay for the use of the work which is implied from the conduct of the parties.

*Id.* at 459. The *Wrench* Court concluded that the extra element of the promise to pay saves a claim from preemption; and that a standard unjust enrichment claim, without this additional element, is thus preempted. *See id.* at 459; *see also Murray Hill*, 264 F.3d at 638 ("Contracts implied in law . . . meet the equivalency requirement of the preemption analysis, while contracts implied in fact may not.").[4] In short, in order to survive preemption, there must be more than a court-imposed equitable reason to require a contract. There must be a promise—either express or implied in fact—of payment for future use of the drawings.

The Court notes that the issue here is close. Defendants do advance a number of strong arguments for why preemption should apply to bar Compass's unjust enrichment claim. Compass clearly labels its claim as one for unjust enrichment or "quantum meruit," which, according to Ohio law, is a contract implied in law. *See, e.g., Legros v. Tarr*, 44 Ohio St. 3d 1, 7, 540 N.E.2d 257, 263 (Ohio 1989). Compass also does not directly address all the elements of a contract; nor is it clear that there was a "meeting of the minds [as] shown by the surrounding circumstances," both of are required for a contract implied in fact. *Stepp v. Freeman*, 119 Ohio App. 3d 68, 74, 694 N.E.2d 510, 515 (Ohio Ct. App. 1997). On the other hand, Compass clarifies in its response brief that it is at least attempting to make allegations to support the existence of a contract implied in fact. It also alleges that it is in the business of "creat[ing] architectural designs" which it then uses to "construct[] and market[] houses." Doc. 2 ¶ 10.

---

[4] Although the *Wrench* and *Murray Hill* courts analyzed the in-law/in-fact difference in the context of Michigan law, the law in Ohio is no different on this point. *See, e.g., Stepp v. Freeman*, 119 Ohio App. 3d 68, 73, 694 N.E.2d 510, 513 (Ohio Ct. App. 1997) (holding that a contract implied in fact requires a "meeting of the minds, manifested in express contracts by offer and acceptance" and "proof of all of the elements of a contract," whereas implied-in-law contracts are an ex post "legal fiction used to effect an equitable result").

10

Compass further alleges that it created drawings for the Lakins "with the understanding that the Lakins would contract with it for the construction of a home based upon" its drawings and designs. *Id.* ¶ 11. Taken together, these allegations could support a claim that "the conduct" of the Lakins rose to the level of a promise. *Stepp*, 119 Ohio App. 3d at 74, 694 N.E.2d at 515.

To be sure, Compass's pleadings as to the possibility of a contract in fact are less than compelling. Still, the Court cannot say that Compass unequivocally does not allege a colorable claim based on a contract implied in fact. As an additional consideration, the Sixth Circuit cautions that, in conducting the preemption analysis, courts are to be mindful that the determination of preemption "is highly dependent upon the facts presented and the claims actually pled by the parties." *Wrench*, 256 F.3d at 456. To this point, many of the in-circuit published cases on this issue involve disposition at summary judgment, not at the pleading stage. *See, e.g., ATC Distrib. Grp., Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 713–14 (6th Cir. 2005); *Murray Hill*, 264 F.3d 622. In light of the Sixth Circuit's admonition; in light of Compass's complaint, in which at least some of its allegations could be understood to implicate conduct indicative of a contract implied in fact; and in light of the requirement that the Court construe the complaint in a light most favorable to Compass, Compass's unjust enrichment claim is not amenable to dismissal. The Court acknowledges that Compass has benefitted from the lack of clarity in its pleadings. Given this stage in litigation, and given the nature of the preemption analysis, the Court sees this as the proper outcome. Although Defendants' motion is denied as to Compass's unjust enrichment claim, it is denied without prejudice to their right to renew the preemption issue in a summary judgment motion.

**2. Conversion**

11

Under Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St. 3d 93, 96, 551 N.E.2d 172, 175 (Ohio 1990). In support of its conversion claim, Compass alleges that the Defendants created and distributed designs infringing on Compass's copyright, built the Lakins' new residence based on these plans, and used Compass's copyrighted design in promotional materials. Doc. 2 ¶ 39. The parties' preemption arguments center on the equivalency prong explained in *Wrench*, meaning the issue here is whether Compass's conversion allegations touch on an additional element or right not protected by section 106 of the Copyright Act. One aspect of its conversion claim survives preemption according to the equivalency test. Compass's briefing clarifies that its complaint rests in part on the allegation that Defendants have retained Compass's original drawings and designs. This represents a claim "concerned with dominion over tangible personal property," which "fall[s] outside the scope of the Copyright Act." *Lynn v. Sure-Fire Music Co.*, 237 F. App'x 49, 54 (6th Cir. 2007). In other words, insofar as Compass bases its conversion claim on this allegation, the Copyright Act does not preempt it.

The rest of Compass's conversion claim fails under the equivalency part of the copyright preemption test. Again, the Copyright Act protects against "acts of reproduction, distribution or display." *Stromback*, 384 F.3d at 301 (quoting *Wrench*, 256 F.3d at 456). Compass bases much of its conversion claim on allegations that directly track these protections; it alleges that Defendants "creat[ed] and distribut[ed]" their own "Infringing Plans" based on Compass designs, and also "used the Copyrighted Compass Design in promotional materials." Doc. 2 ¶ 39. Compass's conversion claim is thus preempted to the extent that it relies on these allegations.

Compass also predicates its conversion claim on the Defendants' use of the infringing plans to construct the Lakins' residence. In *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1988), the Sixth Circuit held that the Copyright Act does protect against this sort of conduct—for the purposes of a copyright claim, "one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to construct the house." *Nino Homes*, 858 F.2d at 280; *see also Johnson v. Jones*, 149 F.3d 494, 499–500 (6th Cir. 1998) ("Original architectural . . . may . . . form the basis for a copyright infringement suit."); *id.* at 497–501 (upholding a verdict against defendants for copying and using architectural plans in order to obtain a city building permit); *see also* 17 U.S.C. § 504(b) (Copyright Act damages provision, providing that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages"). Here, Compass specifically alleges that Defendants drafted new architectural plans either copied from or based directly on Compass's plans, and then used those new plans to construct the Lakins' new residence. According to *Nino Homes*, the Copyright Act preempts these allegations.

### 3. Tortious Interference

With its final state-law claim, Compass alleges tortious interference with business relationships. A tortious interference claim under Ohio law contains the following elements: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Kelley v. Buckley*, 193 Ohio App. 3d 11, 32, 950 N.E.2d 997, 1013 (Ohio Ct. App. 2011). For support, Compass alleges that Heritage violated state law by "wrongfully using, creating or directing the

13

creation of, and distributing the Infringing Plans, constructing the Residence based upon those plans, and wrongfully using unauthorized copies or derivatives of the Copyrighted Compass Design in its promotional materials." Doc. 2 ¶ 44.

The Sixth Circuit addressed copyright preemption in the context of tortious interference claims in *Stomback v. New Line Cinema*, 384 F.3d 283 (6th Cir. 2004). There, it held that, "[g]enerally, tortious interference claims (with contract or prospective economic advantage) are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright." 384 F.3d at 306; *see also id.* (listing the elements for a tortious interference claim under Michigan law, which mirror those of the same claim in Ohio). The *Stromback* Court further explained:

> Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright; copyright also contemplates loss of actual or prospective contract benefits by reason of such unauthorized acts. Pre-emption in this context would, then, appear to be justified. The fact that the tort, unlike copyright infringement, requires awareness of the conflicting contract and an intentional interference with it merely means that the state-created right is narrower than its copyright counterpart, not that it is qualitatively different so as to preclude pre-emption.

*Id.* (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][a] (2004)). Applying this law, Compass bases its claim for tortious interference on Heritage's copying and improper usage of architectural drawings. The Court has already held that the Copyright Act provides protection against this conduct. In short, "[t]his claim is based upon activity which constitutes copyright infringement and is preempted because it is not qualitatively different from a copyright infringement claim." *Id.* at 307 (internal quotation marks omitted).

Compass's primary counter against this conclusion relies on previous cases cautioning against dismissal on preemption grounds at such an early stage in litigation. *See, e.g., Kendall Holdings, LTD. v. Eden Cryogenics, LLC*, No. 2:08-CV-390, 2010 WL 3894166, at *8 (S.D. Ohio Sept. 29, 2010). To be sure, this Court has noted that "courts must remain mindful that the preemption analysis 'is highly dependent upon the facts presented and the claims actually pled by the parties.'" *Id.* (quoting *Murray Hill*, 264 F.3d at 636). However, in *Kendall Holdings* and the other cases Compass cites for support, the tortious interference claims included allegations or facts that clearly did not relate to the Copyright Act. *See id.*; *see also Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 933 F. Supp. 2d 974, 1015 (S.D. Ohio 2013) ("The Court recognizes, as Best stresses, that the tortious interference claims also include a number of separate factual allegations. Accordingly, to the extent such claims are based on separate conduct, preemption does not apply."). All of Compass's tortious-interference allegations rely entirely on conduct that the Copyright Act forbids. Thus, because the face of its complaint is clear, the Copyright Act preempts Compass's claim for tortious interference.

## IV. CONCLUSION

For the reasons stated, Defendants' motion for judgment on the pleadings, doc. 10, is **GRANTED in part and DENIED in part** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

5-9-2014
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15