**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Compass Homes, Inc.,** | : | |
| | : | |
| Plaintiff, | : | Case No. 2:13-cv-0779 |
| | : | |
| vs. | : | District Judge Sargus |
| | : | |
| **Heritage Custom Homes, LLC, et al.,** | : | Magistrate Judge King |
| | : | |
| Defendant(s) | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come David C. and Britt M. Lakin, by and through counsel, and move this Court for summary judgment as to Plaintiff Compass Homes, Inc.'s ("Plaintiff" or "Compass") claims pursuant to Fed. R. Civ. 56(c). A Memorandum in Support is attached.

Respectfully submitted,

/s/ John M. Kuhl
John M. Kuhl (0080966) (Trial Attorney)
Kara M. Singleton (0091146)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street, P.O. Box 1008
Columbus, Ohio  43216-1008
(614) 464-6400
(614) 719-5129 (Facsimile)
jmkuhl@vorys.com
kmsingleton@vorys.com

*Counsel for Defendants
David C. and Britt M. Lakin*

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

The only thing unlawful at issue in this case is Plaintiff's deceitful business practices. Plaintiff meets with perspective clients promising to build them a custom dream home. Plaintiff promises that it can build a custom home within a certain budget, fails to meet that budget and then sues the homeowners when they decide to use another builder, claiming that Plaintiff owns a copyright to the homeowners' ideas. That is precisely what occurred here and this is but one of many cases brought by this Plaintiff involving nearly identical facts.

In the Spring of 2011, Defendants David and Britt Lakin (the "Lakins") met with Plaintiff on a few occasions to exchange ideas and explore building a custom home. Following this exchange of ideas, and after the Lakins provided Plaintiff their own floor plan sketches, Plaintiff prepared two rudimentary floor plans. When Plaintiff could not deliver what the Lakins wanted within their budget, the Lakins found a new builder to build their home – a home that they designed and that is substantially different from the allegedly copyrighted floor plans prepared by Plaintiff. Yet, because Plaintiff cannot compete in the market, Plaintiff seeks to compete in the courtroom and use the Copyright Act to stifle competition among other custom home builders.

Plaintiff's claims must be rejected. For the reasons set forth below, Plaintiff has failed to establish that it has a registered copyright or that Defendants infringed upon that copyright. Accordingly, the Court should grant judgment in favor of Defendants on Plaintiff's copyright claims as well as Plaintiff's ancillary state law claims.

## II. STATEMENT OF FACTS

In 2010, David and Britt Lakin made the decision to build their dream home. (Deposition of Brit Lakin ("Lakin Dep.") at 17.)  For years, the Lakins collected ideas and researched builders.  (*Id*.)  In or about May of 2011, the Lakins began to contact builders, two of whom are parties in this case: Compass Homes, Inc. ("Plaintiff" or "Compass") and Heritage The Green Builder dba Heritage Homes ("Heritage").  (*Id*. at 18.)   Britt Lakin contacted the builders through e-mail and provided each with the Lakins' budget and a list of "wants."  (*Id*. at 19.)  At the time she contacted Compass in late May of 2011, Britt Lakin already had a floor plan in mind.  (*Id*.)  In fact, Mrs. Lakin created her own floor plans from scratch.  (*Id*.)  She shared her ideas, and her floor plan, with both Compass and Heritage.  (*Id*. at 20.)

Mrs. Lakin began corresponding with Compass in late May of 2011.  (Lakin Dep. at 22.)  She provided Compass with her hand drawn floor plan and discussed with Compass the budget for the home.  It was the Lakins' intention for the builder to not only build the home but also for the "builder of [their] choice" "to purchase the lot."  (*Id*. at 42.)  During discussions with Compass, Mrs. Lakin told Compass "several times" "that [$]380,000 was the ceiling . . . . $380,000 was [the Lakins'] max budget."  (*Id*. at 25.)   Mrs. Lakin told Compass that $380,000 was inclusive of both "a very long list of wants, and . . . the lot."  (*Id*. at 26.)  Mrs. Lakin even inquired into whether the Lakins would be able to do "sweat equity" or receive "a credit if [they left] things out and d[id] them [them]selves" "because [the] budget was so tight" and because Mrs. Lakin wanted to "stay in [her] budget."  (*Id*. at 32-33.)

In June of 2011, Compass sent the Lakins floor plan sketches.  (Lakin Dep. at 34.)  These initial sketches were "created with [Britt Lakin's] help" and with "all of [her] ideas."  (*Id*.)  Mrs. Lakin helped to create the floor plans by "handing [Compass the] drawing that she

3

drew [and] by telling them everything [she] wanted." (*Id*.)  The initial floor plans were merely "an iteration of [Mrs. Lakin's] first drawing." (*Id*. at 36-37 (noting that Compass "sketched an[] iteration of [her] first drawing, and they did it with [her] ideas").)

Upon reviewing the initial sketches in mid-June 2011, the Lakins made changes to the sketches, including specifically the layout of the floor plan.  (Lakin Dep. at 41.)  The Lakins corresponded with Compass and provided Compass with a list of "proposed changes to the [floor] plan." (*Id*. at 43.)  Again, the Lakins "asked about sweat equity and purchasing [their] own items." (*Id*.)  In response to this inquiry, and after having represented that Compass homes was a "custom" home builder, Compass told the Lakins that they "were only allowed to buy two items [them]selves." (*Id*. at 45.)  When the Lakins asked why, Compass responded that it was "like a car assembly line, and when [buyers] bring in [their] own items, it slows down the process." (*Id*.)  In addition to inquiring multiple times about the ability to stay on budget by providing their own items, the Lakins once again told Compass that $380,000 was their "max" budget and that this "budget number included the [price of the] lot." (*Id*. at 50.)  At about the same time in June of 2011, Compass provided the Lakins with revised floor plans based on changes requested by the Lakins.  (*Id*. at 51.)  These revised floor plans dated June 28, 2011 (the "Compass Floor Plan")—floor plans created and revised by the Lakins—are the plans that Compass purports to have copyrighted.  (*See* Complaint ¶¶ 12,14, Exs . A & B.)

The Lakins became increasingly dissatisfied with Compass's lack of customization and progress towards an acceptable design.  Accordingly, in mid-June of 2011, they began contacting other companies about building their home.  One of these companies was Heritage.  (*Id*. at 62-63.)  Shortly thereafter, Compass sent an e-mail to the Lakins with the final pricing on the floor plans that Mrs. Lakin had created with Compass.  Compass quoted the Lakins a

4

price of $517,000, an amount $137,000 over their budget. (Lakin Dep. at 60.) The Lakins were "extremely disappointed because [they] told [Compass] from the beginning" that their "house price with lot was [$]380,000." (*Id*.) The Lakins were disgusted and "upset that [Compass] wasted [their] time." (*Id*.) The Lakins informed Compass that they would not be hiring Compass to build their home. When asked by Compass why they were not using it to build their home, Mrs. Lakin informed Compass that "[Compass] was not willing to be custom" and that the $517,000 quote for the home—a quite $137,000 over their budget—"was the nail in the coffin." (*Id*. at 63.)

The Lakins worked with Heritage in the same way that they had worked with Compass. The Lakins provided Heritage with their hand drawn floor plans and list of "wants" for their home. At no time did the Lakins provide to Heritage any of the drawings or floor plans that Compass had given to them. (Declaration of Britt Lakin ("Lakin Decl.") at ¶ 3, attached as Exhibit 1.) At no time did Heritage request any of those drawings. Instead, Heritage and the Lakins worked together to incorporate the Lakins' ideas into floor plans, and eventually blueprints, that became the basis for their home at 7128 Glacier Ridge Blvd, Dublin, Ohio 43017. (*Id*. at ¶ 5.)

After the home was completed, Plaintiff initiated this action claiming that the Lakin Home infringed upon its copyright. For the reasons set forth below, Plaintiff's claims should be rejected and judgment should be entered in favor of Defendants.

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard

Summary judgment is proper when the movant establishes that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and upon which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party has met its burden to identify the absence of a genuine issue of material fact, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). To defeat a motion for summary judgment, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Instead, the non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992).

### B. The Lakins Are Entitled to Summary Judgment on Plaintiff's Copyright Claims.

Plaintiff asserts that Defendants infringed upon Plaintiff's copyrighted floor plan. To establish copyright infringement "two elements must be proven: 1) ownership of a valid copyright; and 2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991). Plaintiff cannot establish either element of its copyright claim and thus Defendants are entitled to judgment as a matter of law.

#### 1. Plaintiff Has Failed To Prove Ownership Of A Valid Copyright.

As an initial matter, Plaintiff has failed to establish that it has a valid copyright in the floor plans at issue in this case. Plaintiff has not produced (despite Defendants' requests throughout discovery including at nearly every deposition)[1] a certificate of registration

---

[1] *See, e.g.,* Deposition of Michael Braunsdorf ("Braunsdorf Dep.") at 148-149.

establishing a valid copyright in the Compass Floor Plan. And while the document purporting to establish Plaintiff's copyright (attached to Plaintiff's Complaint (Doc. # 2) as Ex. B and to Plaintiff's Motion for Summary Judgment (Doc. # 46) as Exhibit A-4) may have been sufficient to survive a motion for judgment on the pleadings, it is not proof of a copyright registration sufficient to survive a motion for summary judgment.[2] *See* May 9, 2014 Opinion and Order at 5-6 (Doc. # 23) (noting that the "document does not necessarily resemble an official copyright registration document and that Defendants could renew their argument at summary judgment). Plaintiff has had more than five months from the Court's decision on the motion for judgment on the pleadings to obtain a valid and authenticated certificate of registration and has failed to do so. Plaintiff's CEO cannot via affidavit turn an internet printout into an authentic and admissible Certificate of Registration from the United States Copyright Office. Thus, Plaintiff has failed to establish a valid a copyright which is prerequisite for suit under the Copyright Act. *See* 17 U.S.C. 411(a). Accordingly, Plaintiff's copyright claim should be dismissed on this basis alone.

    2. <u>Plaintiff Cannot Establish That Defendants Unlawfully Copied Protectible Elements Of the Compass Floor Plan.</u>

Even if Plaintiff had sufficient proof of a registered copyright, Plaintiff's copyright claim must fail because Plaintiff cannot establish that the Lakins' Home is substantially similar to the protectible elements contained in the Compass Floor Plan. *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003). The Sixth Circuit has adopted a two-part test for determining whether the copyrighted work and allegedly infringing work are substantially similar. *Id.* First, the

---

[2] The self-serving affidavit of Plaintiff's CEO is not sufficient evidence to convert a screen-shot from a web page into a Certificate of Registration from the U.S. Copyright Office. This is particularly true where less than four weeks ago, Mr. Braunsdorf testified that this document was "a piece of paper with a bunch of words on it", that he didn't know where the document came from and didn't know whether it was a certificate of registration. (Braunsdorf Dep. at 29-30.)

"unoriginal, unprotectible [sic]" elements of the work must be filtered out. *Id.* Second, "it must be determined whether the allegedly infringing work is substantially similar to the protectible [sic] elements of the original." *Id.*

While under certain circumstances a unique arrangement of residential design components may be protectible through copyright, this is not one those cases. When the Court filters out the unprotectible elements, there is nothing left of Plaintiff's purported copyright. *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 98 ("There are only so many ways to arrange four bedrooms upstairs and a kitchen, dining room, living room, and study downstairs."); *Bldg Graphics, Inc. v. Lennar Corp.*, 866 F.Supp. 2d 530, 545 (W.D. N.C. 2011) ("The similarities that do exist among the plans can be attributed to the fact that 'the variety of ways a two-story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc., is finite.'") (quoting *Howard v. Sterchi*, 973 F.2d 1272, 1276 (11th Dist. 1992)). *See also* Braunsdorf Dep. at 189 ("It's [the great room] in the back of the house, like 99.9 percent of all great rooms in the world, yes. Sure."). Indeed, the Supreme Court has emphasized that copyright protection in a compilation (like an architectural work) is extremely "thin." *Feist Publ'ns, Inc.*, 499 U.S. at 349.

To the extent that Plaintiff's rudimentary floor plans contain protectible elements, the Lakin Home and the Compass Floor Plan are not substantially similar. Although the Sixth Circuit has not addressed the precise standard for determining substantial similarity in the context of the thin copyright afforded architectural drawings, courts around the country have applied a more stringent similarity analysis when evaluating architectural drawings. *See, e.g, Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2nd Cir. 2014.) (holding that Plaintiff's copyright was thin – requiring a showing of "very close" copying); *Intervest Constr., Inc. v.*

8

*Canterbury Estate Homes, Inc*., 554 F.3d 914 (11th Cir. 2008) (applying heightened substantial similarity to floor plan copyright); *Howard v. Sterchi*, 973 F.2d 1272, (11th Dist. 1992) ("In architectural [floor plans], modest dissimilarities are more significant than they may be in other types of art works."); *Dream Custom Homes, Inc. v. Modern Day Constr., Inc.,* 773 F. Supp.2d 1288 (M.D. Fl. 2011) (rejecting copyright claim after "considering the 'thin' protection afforded to [architectural] compilations"); *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonic Int'l P'ship*, 998 F. Supp. 2d 1340, 1348 (S.D. Fl. 2014) ("Substantial similarity in an architectural work is a high standard"); *Bldg. Graphics, Inc.*, 866 F.Supp.2d at 544 ("differences, including qualities such as room size, deviations in design, variant wall placements and angles, closet and entrance locations, and elevations, are carefully considered by the Court.").

Furthermore, while there are some similarities between the Lakins Home and the Compass Floor Plan, "[t]here are only so many ways to arrange four bedrooms upstairs and a kitchen…living room, and study downstairs." *Zalewski* 754 F.3d 95, 107 (2d Cir. 2014). As set forth in the affidavit of Declaration of Britt Lakin, and as is readily apparent from a comparison of the plans, there are substantial differences between the Lakin Home and the Compass Floor Plan, including:

   a. The dimensions of each and every room in the Lakin Home are different from those in the Compass Floor Plan.

   b. The dimensions, pantry location, appliance location, island location, the positioning of the cabinets and the entrance to the kitchen of the Lakin Home are different from the Compass Floor Plan.

   c. The dimensions, window placement, and entrances to the mud room, sun room, study, breakfast area, great room and powder room of the Lakin Home are different from the Compass Floor Plan.

   d. The design and the number of closets in the mud room and foyer, and the layout

9

      of the hallway to and from the mud room and foyer of the Lakin Home are different from the Compass Floor Plan.

e. The staircase in the Lakin Home opens to the great room and is different in both location and direction from the staircase in the Compass Floor Plan.

f. The dimensions, shape, architecture, window placement, closet location and entrances of the laundry room, all three bedrooms, all of the bathrooms, and the "flex" room on the second floor of the Lakin Home are different from the Compass Floor Plan.

g. The dimensions of the second floor hallway and linen closet in the Lakin Home are different from the Compass Floor Plan.  The Compass Floor Plan has a photo niche, the Lakin Home does not.

h. The Lakin Home has a "bump out" on the front of the house and dormers that the Compass Floor Plan do not.

i. The Master Bathroom in the Lakin Home is located in a space that does not exist on the Compass Floor Plan.

j. The dimensions, layout, entry, appliances, counter space, and location of the Laundry Room within the house are different between the Lakin Home and the Compass Floor Plan.

k. The doors, sink placement, toilet placement and tub placement in the "Jack and Jill" and Master baths of the Lakin Home are different from the Compass Floor Plan.

l. The doors and entrances, dimensions, number of windows, location of windows, and the location and dimensions of the closet in the Master Bedroom of the Lakin Home are different from the Compass Floor Plans.

m. The dimensions, number of windows, location of windows and entrances to the garage of the Lakin Home are different than the windows, to the extent they are shown, in the Compass Floor Plan.

n. The front porch of the Lakin Home does not extend across the entire width of the house and is materially different in footprint and shape from the front porch depicted in the Compass Floor Plan.

(Lakin Declaration at ¶ 16.)

      Plaintiff's CEO similarly conceded under oath that there were numerous differences between the Lakin Home and the Compass Floor Plan including different dormers (Braunsdorf

Dep. at 157), the location of the powder room (*id.* at 173), the location of the mud room (*id.* at 174), the dimensions of the great room (*id.* at 175), the front half of the kitchen (*id.* at 176), the entrance to the garage (*id.* at 176), the shape of the pantry (*id.* at 177), the dimensions of the study (*id.*), the dimensions of the great room (*id.* at 178), the layout of the kitchen (*id.* at 178), the dimensions of the bedrooms (*id.* at 179), the dimensions of the owner's suite (*id.* at 179-180), the windows in the owner's suite (*id.* at 180-181), the location and layout of the laundry room (*id.* at 181), the walk-in closets (*id.* at 181-182), the dimensions of the bedrooms (*id.* at 181), the bedroom windows (*id.* at 181).  Moreover, unlike Heritage, Plaintiff did not even design roofing details or elevation drawings.  (*Id.* at 157-158, 160-161).

Simply put, the similarities between the two plans can be attributed to the fact that the Lakin Home represents the Lakins' design choices and the fact that there are only a finite variety of ways to depict the general layout of a four bedroom home.

### C. **The Lakins Are Entitled to Summary Judgment on Plaintiff's Unjust Enrichment Claims**

The Copyright Act preempts state-law claims that mirror those brought under federal law.  See 17 U.S.C. § 301(a).  A "state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright," as specified in 17 U.S.C. §§ 102, 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 4533 (6th Cir. 2011).

The plans at issue meet the subject matter requirement as stated above.  The plans that form the basis for Plaintiff's unjust enrichment claim are within the scope of the "subject matter of copyright."  *Id*.  This is undisputed.  As this Court has previously confirmed, the parties do not dispute that the subject matter requirement is satisfied.  (Op. & Order, Doc. # 23.)

11

With regard to the second element of preemption, the equivalency requirement, it requires the court to apply "a function test to determine whether the state law right at issue is equivalent to any of the exclusive rights under Section 106 of the Copyright Act." *Stromback v. New Lin Cinema*, 384 F.3d 283, 301 (6th Cir. 2004) (citation omitted).  As set forth by the Sixth Circuit:

> Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Id*. (citing *Wrench*, 256 F.3d at 456).

Under Ohio law, a plaintiff must satisfy three elements for an unjust enrichment claims: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Hambleton v. R.G. Barry Corp*., 465 N.E.2d 1298, 1302 (Ohio 1984).  Previously, this court refrained from dismissing Plaintiff's unjust enrichment claim, although it was "less than compelling," because it found that Plaintiff had—at the pleadings stage—sufficiently alleged a contract implied-in-fact.  (Op. & Order, Doc. # 23.)  This "extra element" was enough to save the Plaintiff from a motion for judgment on the pleadings, even though the Plaintiff "seeks to vindicate the same rights with both its unjust enrichment and copyright claim." (Id. at 9.)  We are now at the summary judgment stage and there is no genuine issue of material fact with regard to the absence of this "extra element."

There is no evidence, other than the Plaintiff's bald assertion, that Compass created the Compass Floor Plans "with the understanding that the Lakins would contract with it for the construction of a home based upon that design." (Complaint at ¶ 11.)  A contract implied in

12

fact, "requires a meeting of the minds, "which [makes] it inferable that [a] contract exists as a matter of tacit understanding." *Legros v. Tarr*, 44 Ohio St. 3d 1,7 (1989) (citation omitted). For purposes of a preemption analysis, in order for a contract implied in fact to have existed such that preemption is defeated, there must have been "a promise to pay for the use of the work which is implied from the conduct the parties." *Wrench*, 256 F.3d at 459.

There was no promise to pay and no understanding that the Lakins would contract with Compass for the construction of a home based on the design. In fact, it was just the opposite. "In Compass' dealings with the Lakins, [] they [n]ever signed a purchase contract." (Cinelli-Buroff Dep. at 120.) There was never any other contract either presented to them or that they signed. (Id.) Not only was there no contract even presented to or signed by the Lakins, but when asked what Compass' understanding was of its relationship with the Lakins, a Compass representative—the representative responsible for corresponding with the Lakins throughout their entire relationship with Compass—stated that the Lakins were merely "prospective buyers shopping for a builder." (*Id*. at 120-121.) Simply put, there was no understanding that the Lakins would contract with Compass for the construction of a home based on the design, as alleged in Compass' Complaint. To the contrary, Compass knew the Lakins were not committed to them. (Id. at 121-122 (noting that when a buyer such as the Lakins is meeting with Compass, they may or may not be in contract with a *different* builder).) To impute a quasi-contractual relationship onto the parties under these circumstances is contrary to the testimony the Plaintiff's own representative and its understanding of the parties' relationship.

### D. The Lakins Are Entitled to Summary Judgment on Plaintiff's Unjust Enrichment Claims

Plaintiff's conversion claim against the Lakins must be dismissed because there is no evidence in the record that the Lakins retained – wrongfully or otherwise – Plaintiff's original

13

drawings and designs. Furthermore, the Lakins cannot convert their own ideas. Accordingly, the Court should award judgment in favor of the Lakins on the portion of Plaintiff's conversion claim that managed to survive the Court's May 9, 2014 Opinion and Order.

## IV. CONCLUSION

For the reasons set forth above, the Court should grant judgment in favor of Defendants on all of Plaintiff's remaining claims.

Respectfully submitted,

/s/ John M. Kuhl
John M. Kuhl (0080966) (Trial Attorney)
Kara M. Singleton (0091146)
Vorys, Sater, Seymour and Pease LLP
52 E. Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
(614) 464-6400
(614) 719-5129 (Facsimile)
jmkuhl@vorys.com
kmsingleton@vorys.com

Counsel for Defendants
David C. and Britt M. Lakin

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing will be served upon all counsel of record through the Court's ECF Filing System this 15th day of October, 2014.

/s/ John M. Kuhl
John M. Kuhl
